St. Louis & San Francisco Railroad Company v. J. T. Dysart
et al.

Decided June 25, 1910.

**1.—Attorney and Client—Damage Suit—Contingent Fee—Valid Contract.**

A contract between a client and his attorneys whereby the client assigned to said attorneys an undivided one-half interest in his cause of action against a railroad company for damages for personal injuries as a fee for services to be rendered, and whereby a lien was given said attorneys on the remaining half interest in said cause of action to secure them in any sum of money which the client might become indebted to them for on any other account than

the fee, considered, and held valid, and by reason of notice both actual and constructive thereof the defendant company was liable to said attorneys for one-half the amount which the plaintiff would have recovered from the defendant but for a compromise between the defendant and the client, and defendant was also liable to said attorneys for the amount which the attorneys had advanced to the client.

### 2.—Carrier—Shipping Contract—Action for Damages—Limitation.

A contract for the shipment of live stock contained the following stipulation: "That no suit or action against the party of the first part (the carrier) for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity unless such suit or action be commenced within six months next after the cause of action shall accrue, etc." Held, to refer to a suit or action for damages to the stock shipped, and not to an action for damages for personal injuries sustained by the owner or his agent while accompanying the stock during transportation.

### 3.—Same—Waiver.

The acts of a defendant railroad company in attempting to compromise and settle with the plaintiff in a suit for personal injuries more than six months after the cause of action accrued, would be a waiver of a stipulation that suit for such damages should be instituted within six months after the cause of action accrued.

### 4.—Same—Riding on Cars, Stipulation Against.

A stipulation in a shipping contract that the party with whom it was made, he being a caretaker of cattle during transportation, would not get on or be on any freight car while switching was being done at stations, would not be violated by such caretaker, after the engine had been detached from the train, going into the car of cattle with the knowledge and consent of the conductor for the purpose of attending to the cattle, and the railroad company would be liable for personal injuries inflicted upon said caretaker by the negligence of the employees while he was so engaged.

### 5.—Contract—Remedy—Law of Forum.

A shipping contract executed in the Indian Territory contained a stipulation that any suit for damages for breach thereof should be brought within six months after the cause of action accrued. Held, that the stipulation affected only the remedy and would be governed by the law of the forum in which the suit was brought.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

*W. F. Evans, Andrews, Ball & Streetman,* and *Head, Dillard, Smith & Head,* for appellant.—The evidence being undisputed that the first connection that the appellant had with the cattle was when they were delivered to it by the Chicago, Rock Island & Pacific Railroad Company at Wiester, no consideration other than its agreement to carry same was necessary to support the contract between appellant and plaintiff, Dysart, and the court erred in holding that such contract was without consideration. Arthur v. Texas & Pacific Ry. Co., 204 U. S., 505; Cau v. Texas & Pacific Ry. Co., 194 U. S., 427; Gulf, C. & S. F. Ry. Co. v. Short, 51 S. W., 261.

A contract with the caretaker of live stock that he is to remain off of the freight cars while switching is being done at a station, is valid

and binding, and one who enters a car where his cattle are, while switching is being done, in violation of such contract made by him, is not in the proper discharge of his duties as caretaker.  Missouri, K. & T. Ry. Co. v. Avis, 100 Texas, 33; Ray's Neg. Imp. Duties (Pas.), 269.

There is no contention that the written instrument between Dysart and defendant contained any agreement to settle with plaintiff's attorneys, and a contemporaneous or prior verbal agreement of that kind would add to, contradict and vary the written contract of settlement and would therefore be irrelevant and immaterial.  Belcher v. Mulhall, 57 Texas, 17; Coverdill v. Seymour, 94 Texas, 1; Houston & T. C. Ry. Co. v. McCarty, 94 Texas, 301; Rubrecht v. Powers, 1 Texas Civ. App., 282; Sanborn v. Murphy, 86 Texas, 437; Lanius v. Shuber, 77 Texas, 24; Wooters v. International & G. N. R. Co., 54 Texas, 294; Kramer v. Wolf Cigar Stores, 99 Texas, 597; East Line & R. R. Ry. Co. v. Garrett, 52 Texas, 133.

The original suit being against the St. Louis, San Francisco & Texas Railroad Company, was not a compliance with that clause of the contract which required suit to be commenced against the St. Louis & San Francisco Railroad Company, an entirely separate and distinct corporation or entity, within six months.

The validity of the contract between plaintiff and interveners and Wilhelm is governed by the law of the Indian Territory, where it was made.

A contract which is void by the lex loci contractus, is void everywhere. Andrews v. Pond, 13 Peters, 65.

The validity of a contract is everywhere determined by the lex loci contractus.  Suydam v. Broadnax, 14 Peters, 67.

A contract for contingent fee void in Maine, where made, though valid in New York, where the attorney lives and where services were to be rendered, is governed by the law of Maine and void.  Blackwell v. Webster, 29 Fed., 614.

A contract by an express company made in Illinois, where clause requiring notice of damage is void, to carry goods to Texas where it is valid and where the loss occurred, is governed by the law of Illinois, where made, and void everywhere.  Pittman v. Pacific Exp. Co., 59 S. W., 949; Chicago, M. & St. P. Ry. Co. v. Solan, 169 U. S., 133; Armstrong v. Galveston, H. & S. A. Ry. Co., 92 Texas, 117.

A contract by servant to give notice to the master of personal injuries received, valid in Territory where made, is valid in Texas where suit is brought.  Chicago, R. I. & P. Co. v. Thompson, 100 Texas, 185.

An assignment of a chose in action of personal property, the ownership of which follows the person, is governed by the law of the domicile of the assignor.  Weider v. Maddox, 66 Texas, 371-377; Frazier v. Moore, 11 Texas, 755; Appollos v. Staniforth, 3 Texas Civ. App., 502; Chicago, R. I. & P. Ry. Co. v. Thompson, 100 Texas, 185.

There being no statute in force in the Indian Territory authorizing the assignment of a cause of action for unliquidated damages for per-

sonal injury, the attempted assignment to interveners is illegal and invalid for all purposes, and conferred upon interveners no rights, and deprived plaintiff of none.   Stewart v. Houston & T. C. Ry. Co., 62 Texas, 246; Jones v. Matthews, 75 Texas, 1; Comegys v. Vasse, 1 Peters, 193.

*Wolfe, Hare & Maxey,* for appellees.

RAINEY, CHIEF JUSTICE.—The appellee, Dysart, brought this suit against the appellant to recover damages for personal injuries received by him through the negligence of appellant's servants.   Wolfe, Hare & Maxey intervened claiming that Dysart had employed them as attorneys to represent him in the litigation, for one-half of what might be recovered, and assigned and transferred one-half of his cause of action to secure them in their fee and gave a lien on the other half to secure the payment of such money as they might advance to him.   Dysart compromised with the appellant without the knowledge or consent of interveners, and the litigation was prosecuted by the interveners to protect their own interest.   The case was tried by the court without a jury, and interveners recovered a judgment.

Various assignments of error are presented by appellant, all of which have been considered by us, and we have concluded none of them present reversible error.   The trial court filed conclusions of fact and law which meet our approval and the same are adopted as the conclusions of this court.   They are as follows:

"That on December 10, 1906, H. P. Ward, as the owner of one hundred head of cattle entered into a contract with the Chicago, Rock Island & Pacific Railway Company for the transportation of said cattle from Herbert, Indian Territory, to East St. Louis, Illinois, which said cattle were loaded in three cars, and a bill of lading issued therefor which was signed by the local agent of said company as such and by the said H. P. Ward.   That said contract was a through bill of lading and, in addition to the transportation of said cattle, said company also agreed to transport plaintiff J. T. Dysart for the purpose of caring for said stock and gave him free return passes.

"Second:   That said cattle and said J. T. Dysart were by said Chicago, Rock Island & Pacific Company transported to the station of Wiester, in the Indian Territory, and there said cattle were, on the 11th of December, 1906, delivered to the St. Louis & San Francisco Railroad Company for final delivery.   That the agent of said last named company there took up said original through bill of lading and issued in lieu thereof a new contract which was duly signed by him as such agent and by J. T. Dysart.   That no new consideration was paid for such new contract nor did said company perform any additional services or do any other act or thing which would constitute a consideration therefor.

"Third:   That said last named contract, or the front side thereof, contained the following provision:

"(a) 'That no suit or action against the party of the first part for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity unless such suit or action be commenced within six months next after the cause of action shall accrue, and should any suit or action be commenced against the first party after the expiration of six months, the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.' That on the back of said contract was the following:

"(b) 'The undersigned, owners or in charge of the live stock mentioned in the within contract, in consideration of the free pass granted us by the St. Louis & San Francisco Railroad Company, hereby agree that the St. Louis & San Francisco Railroad Company shall not be liable for any injury or damage of any kind suffered by us while in charge of said stock or in our return passage; and we hereby further agree to observe the following regulations, and do hereby release said railroad company or those operating same from all liability for any injury or damage suffered by us, if injured while violating said regulations.

" 'Will remain in the caboose car attached to the train drawing said car while the train is in motion. Will get on and off said caboose car only while the same is still.

" 'Will not get on or be on any freight car while switching is being done at stations.

" 'Will not stand or walk on any track or station or other place at night without lantern. (Cancel unused spaces.)

'Signed, J. T. Dysart.'

"Fourth: After the train in which said cattle were being transported had left Wiester some of the cattle were down in the cars, and plaintiff spoke to the conductor about this and desired him to give him an opportunity to get them up. The conductor told plaintiff that they would soon arrive at the station of Jensen where the train would stop twenty minutes, and would there have ample opportunity to attend to the stock. That upon the arrival of the train at Jensen, plaintiff got out of the caboose and went forward to get his cattle up, and in the meantime the engine had been cut loose from said train, it had pulled up into the yard and backed in onto a side track and had picked up some cars for the purpose of placing them in the train. That the employees engaged in discharging said duty so negligently performed the same as to allow said cars to get loose and from under their control and run back upon the track upon which the train was standing in which the cattle were being carried, and that said cars came into collision with the standing train and threw plaintiff down in the car where he was engaged in attempting to get the cattle up, causing him to be trampled upon and injured.

"Fifth: That the collision of said cars with the cars in which said cattle were being transported and in which plaintiff was at the time, was caused by the negligence of defendant's employees engaged in operating

said train, and plaintiff at the time was in the proper discharge of his duties as caretaker for said cattle, and the operatives of said train either knew of his presence in said car or by the exercise of ordinary care should have known thereof.

"Sixth: That plaintiff's injuries were such as to cause him the loss of considerable time and he has suffered pain, both physical and mental, and that he was damaged thereby in the sum of twelve hundred ($1200) dollars.

"Seventh: I find that plaintiff was not guilty of any contributory negligence proximately contributing to his injuries, and I further find that his subsequent conduct with reference to his injuries was such as might have been employed by a person of ordinary prudence.

"Eighth: I find that on the 15th day of March, 1907, plaintiff entered into a written contract with interveners, Wolfe, Hare & Maxey, and with P. E. Wilhelm, attorneys, to prosecute this suit for the recovery of the damages which he had sustained by reason of the negligence of defendants hereinbefore referred to. That it was understood and agreed by said parties that the services to be performed by said attorneys were to be rendered in the State of Texas, and that a written contract was drawn to that effect, which contract was executed in the Indian Territory where plaintiff at the time resided, a copy of which is hereto attached, marked exhibit A.

"That in said contract said plaintiff conveyed to his said attorneys as a fee for services to be rendered, an undivided one-half interest in his said cause of action or any judgment or sum of money that might be got on account thereof. That he also in said contract, conveyed, transferred and assigned to his said attorneys his remaining interest in said cause of action to secure any sum of money that he might become indebted to them for any other cause than that of the fee contracted to be paid. That said contract was duly acknowledged in the manner required by law and was on March 19, 1907, duly filed with the papers of this cause where it has ever since remained on file, and that the same was duly noted on the docket and all the formalities of law complied with in reference thereto.

"Ninth: That thereafter the said P. E. Wilhelm ceased to be an attorney in said cause, and the said Wolfe, Hare & Maxey, succeeded to all the rights and privileges theretofore held jointly by them and said Wilhelm.

"Tenth: That defendant had both actual and constructive notice of the rights of interveners under said contract.

"Eleventh: That on or about the 11th day of July, 1908, the defendant, the St. Louis & San Francisco Railroad Company, by and through its duly authorized agent, W. F. Baker, without the knowledge or consent of interveners, paid to plaintiff, J. T. Dysart, the sum of three hundred and twenty-five ($325) dollars, and took from him a release and full discharge from any and all liabilities growing out of the matter

and things complained of in this suit, a copy of which is hereto attached marked exhibit B.

"Twelfth: That if the said P. E. Wilhelm ever in any manner gave his permission to defendant or its agent to settle this cause with plaintiff, it was long after his connection with the case had ceased, and at a time when he had no interest therein, and of which facts said defendant had full knowledge.

"Thirteenth: That when said settlement was made with plaintiff and when said release was taken from him, it was understood by defendant and by plaintiff that defendant would settle with his attorneys, Wolfe, Hare & Maxey.

"Fourteenth: I find that it was not a fact that at the time of or before the transfer and assignment or contract of employment made between plaintiff and interveners and said Wilhelm, that there was any understanding or agreement between them that interveners would, pending the contemplated suit, advance any money to pay the costs or expense thereof, and I further find that there was no agreement or understanding that any sums of money were to be advanced to plaintiff pending the litigation, and I find that none of the money claimed by interveners herein was advanced or paid out by reason of any illegal contract or agreement.

"Fifteenth: I find that the interveners have paid out and advanced to plaintiff, and that he is justly indebted to them in the sum of six hundred eleven and 70/100 dollars ($611.70).

"Sixteenth: I find that interveners have fully performed their contract with plaintiff.

"Seventeenth: I find that this suit was instituted on March 16, 1907. That the plaintiff was named as Alexander Dysart, and the defendant as the St. Louis, San Francisco & Texas Railroad Company. That shortly after the institution of said suit, plaintiff's attorney called defendant's counsel's attention to the mistake in plaintiff's name. I further find that said original petition describes the facts and circumstances, together with date and place of happening of the accident, so that defendant's counsel, who were local counsel for both of the defendants, the St. Louis & San Francisco Railroad Company and the St. Louis, San Francisco & Texas Railway Company, had full knowledge of this suit, and that the filing of said original petition was a substantial compliance with provisions of the contract plead by defendant requiring suit to be brought within six months.

"Eighteenth: The contract entered into between the Chicago, Rock Island & Pacific Railway Company, and H. R. Ward, contains upon the face thereof the following: 'That the person or persons in charge of live stock covered by this contract shall remain seated in the caboose car attached to the train while the same is in motion, and that whenever such person or persons shall leave the caboose car or pass over or along the cars or track, they shall do so at their own risk of personal injury from every cause whatever, and that the said first party shall

not be required to stop or start its trains or caboose cars from depots or platforms or to furnish lights for the accommodation or safety of such persons.

" 'That no suit or action against the first party for the recovery of any claim by virtue of this contract shall be sustainable in any court of law or equity unless such suit or action be commenced within six months after the cause of action shall occur, and should any suit or action be commenced against the first party after the expiration of six months, the lapse of time shall be constituted conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.'

"The third finding relates to the contract of shipment executed by defendant, the St. Louis & San Francisco Railroad Company. None of the provisions set forth in the third finding above are in the contract entered into by the Chicago, Rock Island & Pacific other than indicated in this finding.

"Nineteenth: I find that soon after the institution of this suit and at various times up to the 11th day of July, 1908, the defendant, the St. Louis & San Francisco Railroad Company, approached the plaintiff, J. T. Dysart, and attempted to make a settlement with him on account of the matters and things for which this suit was instituted and being prosecuted, and that such negotiations continued until the time of the settlement mentioned in the eleventh finding above.

"*Conclusions of law.*—First: I conclude as a matter of law that the interveners' contract was valid. That it was intended to be performed in the State of Texas, and that if it was not, the defendants are bound by it because of their actual knowledge thereof prior to the time of the settlement with plaintiff in July, 1908.

"Second: I conclude that the limitation as to the time within which suit might be brought, as found in the third finding of fact, referred to the damage which might be claimed on account of injury to the stock shipped, and that the liability of the defendant to the owner or party in charge of such stock was attempted to be set out in the stipulation printed on the back of said contract copied in the third finding of fact as section A.

"Third: I conclude that if by reason of any provision of the contract plaintiff had forfeited any right to maintain this suit or recover herein, the same was waived by the defendant by reason of the facts found in the nineteenth finding of fact.

"Fourth: I conclude that plaintiff was not, within the meaning of the contract, on any car while switching was being done at the time of his injuries.

"Fifth: I conclude that plaintiff had a valid cause of action against the defendant, St. Louis & San Francisco Railroad Company, and but for his settlement with said company, should have recovered a verdict against said defendant for the sum of $1200, and I further conclude that the interveners, Wolfe, Hare & Maxey, are entitled to recover against

said defendant the sum of $600 on account of their fee for bringing and prosecuting this suit, and the further sum of $600 by reason of plaintiff's assignment to them of the remainder of his cause of action, and that they are also entitled to recover all costs incurred in this suit.

"Sixth: I find that the plaintiff is not entitled to recover anything herein and that no judgment should be rendered against the St. Louis, San Francisco & Texas Railway Company, and that it recover its costs herein."

We further conclude that the stipulation in the contract between the appellant and Dysart that suit should be brought "within six months" affects only the remedy and is governed by the law of the forum. This point is discussed by Justice Bookhout in St. Louis, I. M. & S. Ry. Co. v. Hambrick, 97 S. W., 1072, and reference to said case is here made as expressing our views on this point.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.